# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN  DIVISION

| | |
|---|---|
| **BERNADETTE PHARR, as Personal Representative of the Estate of Jeffrey Tucker,** ] ] ] ] | |
| **Plaintiff,** ] ] | |
| ] | **CV-15-BE-1362-E** |
| v. ] | |
| ] | |
| **JIMMY HARRIS, et al.,** ] | |
| ] | |
| **Defendant**. ] | |

## MEMORANDUM OPINION

This matter is before the court on "Defendant's Motion to Dismiss" filed by John Smith, requesting that the court dismiss the claim brought against him under Alabama state law in Count II.  Smith brings this motion pursuant to Rule 12(b)(1), asserting immunity from suit; and to 12(b)(6) for failure to state a claim.  The Plaintiff responded to this motion (doc. 17), and Defendant Smith replied (doc. 18).  For the reasons stated in this Memorandum Opinion, the court FINDS that the motion is due to be GRANTED.

## I.  LEGAL STANDARD

Defendant Smith challenges the Complaint pursuant to Rules 12(b)(1) and 12(b)(6).

Under Fed. R. Civ. P. 12(b)(1), a party may move the court to dismiss a case if the court lacks jurisdiction over the subject matter of the case.  Plaintiffs, as the parties invoking jurisdiction, bear the burden of establishing the court's subject matter jurisdiction. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir.1994).

1

Attacks on subject matter jurisdiction under Rule 12(b)(1) occur in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990); *Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982). "'Facial attacks' on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true." *McMaster v. United States*, 177 F.3d 936, 940 (11th Cir. 1999)(quoting *Lawrence*, 919 F.2d at 1528-29). "On a facial attack a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990).

Factual attacks, on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* at 1529. The Eleventh Circuit has explained that, for factual attacks,

> [t]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not rpeclude the trial cout from evaluating for itself the merits of jurisdictional claims.

*Williamson v. Tucker,* 645 F.2d 404, 412-13 (5th Cir. May 20, 1981), *cert. denied,* 454 U.S. 897

(1981). [1]

"[A] plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1273 (11th Cir. 2000).

Because of the ruling in this case, limited to Rule 12(b)(1), the court does not set out the legal standard applicable for dismissal under Rule 12(b)(6).

## II. FACTS

Because Smith brings the motion to dismiss pursuant to Rule 12(b)(1), asserting State immunity on the wrongful death claim, the court considers the facts stated in the affidavit of Michael Edmondson, the Chief Deputy of the DeKalb County Sheriff's Office, attached to the brief supporting the motion to dismiss. Those facts reflect that Smith has been employed as a deputy with the DeKalb County Sheriff's Office since February 19, 2009. His duties include acting as a paramedic, identifying treatment(s) for inmate medical needs, performing treatments for inmates as necessary, determining the need for physician or other medical treatments such as hospitalization for inmates, and maintaining medical records on inmates. (Doc. 7-1, at 3).

The court notes that although Pharr disputes whether Smith was acting in the line and scope of his employment as a deputy sheriff and performing law enforcement functions when he engaged in the conduct made the basis of this lawsuit, Pharr does *not* dispute that Smith was employed as a deputy with the DeKalb County Sheriff's office at the time of the conduct made the basis of this suit. Pharr did not ask the court to strike the affidavit, did not submit evidence in opposition to the affidavit, and did not request that she be allowed to conduct discovery to

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the Eleventh Circuit adopted as precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

counter the affidavit's statement that Smith was a deputy sheriff. Accordingly, the court considers the relevant facts stated in Edmondson's affidavit, which are included in the following facts.

Plaintiff Bernadette Pharr is the appointed representative of the Estate of Kenneth Ray Tucker. The genesis of this suit occurred when Tucker suffered from a staph infection while incarcerated in the Dekalb County Jail, and subsequently died at Dekalb Regional Hospital as a result of complications of that infection. Tucker first noticed the problem on or about Saturday, September 7, 2013, when he felt a painful pimple or boil on his right buttock, and the infection exacerbated over the next few days and started oozing puss.

Defendant Smith has been a deputy sheriff working at the Dekalb County Jail since February of 2009 and acted as a paramedic assigned to the jail. He first saw Tucker on Monday, September 9, 2013 or on Tuesday, September 10, 2013. Smith recognized that the infection was staph and provided Tucker with antibiotic ointment. Tucker's condition continued to worsen over the next few days, and Tucker made numerous requests for medical treatment between September 10, 2013 and September 16, 2013 through the kiosk system, provided for that purpose, and also through verbal requests to correction officers through the intercom.

By Friday, September 13, 2013, at the latest, Tucker's condition had deteriorated to the point that he was seriously ill and obviously in need of medical treatment beyond what was available at the jail: he was in excruciating pain, was vomiting, could not control his bowels, was short of breath, was experiencing dizziness and balance issues, and had difficulty walking and communicating. The correction officers communicated with the medical staff, including Smith, about Tucker's deteriorating condition. Therefore, Smith was aware by September 13, 2013, at

4

the latest, that Tucker was seriously ill with a staph infection or some other life-threatening condition, and that he required evaluation and treatment in a hospital, including IV antibiotics.

However, Smith ignored Tucker and his medical needs from Friday, September 13, 2013 until after 8:00 p.m. on Monday evening, September 16, 2013.  Tucker never received antibiotics at the jail, although he received antibiotic ointment.  Sometime after 8:00 on the evening of September 16, 2013, Tucker was taken to the hospital where he died on Tuesday, September 17, as a result of complications of staph infection.

### III.  DISCUSSION

This motion to dismiss addresses only the claim for wrongful death asserted against John Smith in Count II under Alabama state law.  That claim alleges that Smith "negligently and/or wantonly" violated "the standard of care applicable to inmates suffering from staph infections" with the "foreseeable result that he suffered unnecessary pain and suffering and, ultimately, died." (Doc. 1, at 9, ¶ 44).   Smith asserts that the claim is due to be dismissed under Rule 12(b)(1) because he is a deputy sheriff entitled to absolute state immunity; and that dismissal is also appropriate under Rule 12(b)(6) because the claim fails to meet the level of specificity required by the Alabama Medical Liability Act.  The court will first address the assertion of immunity.

Smith asserts his entitlement to immunity under Article I, § 14 of the Alabama Constitution of 1901; and the following sections of the Alabama Code: § 36-22-3(a)&(b), § 14-6-1, and § 14-6-19.  The Alabama Constitution of 1901 provides generally that the State of Alabama is immune from suit, and also provides that sheriffs are executive officers of the state entitled to sovereign immunity.  Ala. Const. art. I, § 14 ("the State of Alabama shall never be

5

made a defendant in any court of law or equity"); & art. V, § 112 ("The executive department shall consist of a governor ... and a sheriff for each county."). In its decisions, the Supreme Court of Alabama has described this immunity provision to constitutional officers such as sheriffs as a "wall" that is "nearly impregnable" and "almost invincible." *Ex parte Town of Lowndesboro,* 950 So. 2d 1203, 1206 (Ala. 2006) (quoting *Alabama Agr. & Mech. Univ. v. Jones,* 895 So. 2d 867, 872 (Ala. 2004) ("The wall of immunity erected by § 14 is nearly impregnable.") & *Alabama State Docks v. Saxon,* 631 So. 2d 943, 946 (Ala. 1994) (stating that "[t]his Court has recognized the almost invincible wall of the state's immunity") (internal quotations omitted))).

The United States Supreme Court has explained that, based on the Alabama Constitution provisions, "tort claims brought against sheriffs based on their official acts therefore constitute suits against the State." *McMillian v.Monroe Cnty., Ala.,* 520 U.S. 781, 789 (1997). The Alabama Supreme Court "'has consistently held that a claim for monetary damages[2] made against a constitutional officer in the officer's individual capacity is barred by State immunity whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment.'" *Ex parte Donaldson,* 80 So. 3d 895, 900 (Ala. 2011)

---

[2] The following exceptions exist to State immunity for sheriffs and their deputies: actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute. *Parker v. Amerson,* 519 So. 2d 442, 443 (Ala. 1987).
    Pharr does not specifically request injunctive relief, so these exceptions to do not apply. She requests compensatory and punitive damages plus interest, costs, attorney's fees, expert witness fees, and "such other and further relief to which she is justly entitled." Doc. 1, at 9-10.

(quoting *Ex parte Davis,* 930 So. 2d 497, 500-01 (Ala. 2005)).   Put another way, State immunity covers a sheriff  with respect to suits brought "for negligent performance of his statutory duties." *Alexander v. Hatfield,* 652 So. 2d 1142, 1143 (Ala. 1994).

The Alabama Supreme Court has further explained that sheriff *deputies* are legal extensions of the sheriff and "'[i]f the deputy's acts are generally considered the acts of the sheriff, it is logical that those acts should enjoy the same immunity covering the sheriff's own acts.'" *Wright v. Bailey,* 611 So. 2d 300, 303 (Ala. 1992).  That immunity covers suits against deputy sheriffs in their official and individual capacities.  *Johnson v. Conner,* 720 F.3d 1311, 1313 (11th Cir. 2013); *Ex parte Shelley,* 53 So. 3d 887, 891 (Ala. 2009).

However, the State immunity[3] of a deputy sheriff for suits for monetary damages is absolute  only "for acts performed in the line and scope of the deputy sheriff's employment." *Ex parte Donaldson,* 80 So. 3d at 899.  Here is the rub:  Pharr argues that State immunity does not apply to Smith's conduct made the basis of this suit because his "duties were strictly medical in nature and not related in any way to law enforcement."  (Pl.'s Br. Doc. 17, at 1).   In other words, Pharr contends that only traditional law enforcement duties, e.g., duties such as ferreting out crime and arresting criminals, can be within the line and scope of a deputy sheriff's employment and eligible for State immunity.  She provides no case law support for the proposition that duties that are medical in nature cannot also be in the line and scope of a deputy sheriff's employment.  Rather, she points the court to Alabama Code sections describing a sheriff's duties, and claims that those code sections do not encompass any sheriff's duties that relate to providing medical

---

[3] The court notes that the doctrine of State immunity applicable to constitutional officers such as a sheriff and his deputy is distinguishable from the doctrine of State-agent immunity discussed in *Ex parte Cranman,* 792 So. 2d 392 (Ala. 2000).

care to people at the county jail.

This court does not agree. The court acknowledges that § 36-22-3, which lists the duties of the sheriff, does not specifically state medical duties, but that section does not purport to be exhaustive. Rather, the last sub-section provides that a duty of the sheriff is "[t]o perform such other duties as are or may be imposed by law." Ala. Code § 35-22-3(a).

Section 14-6-1 reflects that a sheriff's duties encompass operating the county jail, providing as follows:

> The sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. The sheriff may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein for whose acts he or she is civilly responsible. Persons so employed by the sheriff shall be acting for and under the direction and supervision of the sheriff and shall be entitled to the same immunities and legal protections granted to the sheriff under the general laws and the Constitution of Alabama of 1901, as long as such persons are acting within the line and scope of their duties and are acting in compliance with the law.

Ala. Code § 14-6-1 (1975) (amended June 14, 2011). Significantly, section 14-6-19 reflects that *the sheriff's duties include furnishing medicines and medical attention* to those who are sick and injured at the jail, when they are unable to provide them for themselves:

> Necessary clothing and bedding must be furnished by the sheriff or jailer, at the expense of the county, to those prisoners who are unable to provide them for themselves, and *also necessary medicines and medical attention to those who are sick or injured*, when they are unable to provide them for themselves.

Ala. Code § 14-6-19 (1975) (emphasis added).

Thus, contrary to Pharr's argument, providing medical attention to those in the county jail unable to provide it for themselves is indeed a duty imposed by law on the sheriff. Because providing medical attention is in the line and scope of the sheriff's employment, and because the

8

deputy sheriff is a legal extension of the sheriff, providing medical attention is in the line and scope of the sheriff deputy's employment.  The court FINDS that State immunity applies to the claims against Smith in Count II, because he was acting within the line and scope of his employment as a deputy sheriff when he engaged in the conduct alleged in that Count.

The court notes that Smith wears two hats: deputy sheriff and employee of the jail.  As he enjoys State immunity as a deputy sheriff from the wrongful death claim asserted in Count II under Alabama law, the court need not address any separate immunity protection that he enjoys as a jailer under Alabama law or as a delegatee of the sheriff's duties.  *See* Ala. Code § § 14-6-1 & 36-22-3(b).  Further, as the court has ruled that Smith is entitled to State immunity as to the claim in Count II, the court need not and will not address whether Pharr failed to plead the claim in Count II to a level of specificity required by the Alabama Medical Liability Act.

The court will enter a separate Order dismissing the wrongful death claim in Count II against Smith pursuant to Rule 12(b)(1).  However, the court will not dismiss Smith as a Defendant because Count I asserts a claim that he was deliberately indifferent to Tucker's serious medical needs, and the motion to dismiss did not address that claim.

Dated this 24th day of November, 2015

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE